UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| LARRY D. JENT; MARY S. JENT,<br><br>             Plaintiffs,<br><br>      v.<br><br>NORTHERN TRUST CORPORATION; and<br>THE NORTHERN TRUST COMPANY,<br><br>             Defendants. | NO. CIV 13-01684 WBS CKD<br><br><br>MEMORANDUM AND ORDER RE:<br>MOTION TO DISMISS |

----oo0oo----

        Plaintiffs Larry D. Jent and Mary S. Jent filed suit against defendants Northern Trust Corporation and the Northern Trust Company, bringing claims arising from defendants' allegedly wrongful conduct related to a residential loan.  Currently before the court is defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.   Factual and Procedural Background

        In 2011, plaintiffs entered into a loan agreement secured by a Deed of Trust on property located at 12001 Somerset

1    Drive in Truckee, California (the "Property").  (Compl. ¶¶ 1, 16
2    (Docket No. 1); Defs.' Request for Judicial Notice ("RJN") Ex. 1
3    (Docket No. 8-1).)  The Note and Deed of Trust named defendant
4    Northern Trust, N.A., as beneficiary.  (Compl. ¶ 1.)  Beginning
5    in November 2012, plaintiffs were unable to make payments on the
6    loan.  (Id. ¶ 17.)  At this time, the Property was listed for
7    sale, and plaintiffs attempted to secure additional credit with
8    other financial institutions.  (Id. ¶¶ 18-19.)

9         Plaintiffs allege that, on or about March 21, 2013,
10   defendants recorded a Notice of Default ("NOD") on the Property,
11   without contacting plaintiffs as required by California law.
12   (Id. ¶ 20.)  The NOD was accompanied by a statement making the
13   contradictory assertion that defendants had both contacted
14   plaintiffs to assess plaintiffs' financial situation and that
15   defendants, despite exercising due diligence, were unable to
16   contact plaintiffs.  (Id. ¶ 21.)  Plaintiffs claim that, as a
17   result of the recording, other financial institutions withdrew
18   their offers of credit.  (Id. ¶ 27.)

19        In April 2013, plaintiffs informed defendants that the
20   NOD had been improperly recorded, and in May defendants recorded
21   a rescission of the NOD.  (Id. ¶¶ 30-34; RJN Ex. 2.)  Defendants
22   offered a forbearance plan to plaintiffs conditioned on release
23   of all liability, which plaintiffs rejected.  (Compl. ¶ 35.)

24        Plaintiffs bring claims for (1) slander of title, (2)
25   negligent misrepresentation, (3) negligence, and (4) violation
26   California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs.
27   Code § 17200 et seq.  (Compl. ¶¶ 36-60.)  Defendants now move to
28   dismiss the Complaint for failure to state a claim pursuant to

2

1  Rule 12(b)(6).  (Docket No. 7.)

2  II.  Request for Judicial Notice

3          In general, a court may not consider items outside the

4  pleadings when deciding a motion to dismiss, but it may consider

5  items of which it can take judicial notice.  Barron v. Reich, 13

6  F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial

7  notice of facts "not subject to reasonable dispute" because they

8  are either "(1) generally known within the territorial

9  jurisdiction of the trial court or (2) capable of accurate and

10  ready determination by resort to sources whose accuracy cannot

11  reasonably be questioned."  Fed. R. Evid. 201.  Judicial notice

12  may properly be taken of matters of public record outside the

13  pleadings.  See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504

14  (9th Cir. 1986).

15          Defendants request that the court judicially notice two

16  recorded documents pertaining to the Property, the underlying

17  promissory note and the Notice of Rescission.  (See RJN Exs. 1-

18  2.)  The court will take judicial notice of these documents,

19  since they are matters of public record whose accuracy cannot be

20  questioned.  See Lee v. City of Los Angeles, 250 F.3d 668, 689

21  (9th Cir. 2001).  However, the court will not take judicial

22  notice of any disputed facts contained in the documents.  Id. at

23  690.

24  III. Legal Standard

25          On a motion to dismiss, the court must accept the

26  allegations in the complaint as true and draw all reasonable

27  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

28  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

3

1    Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

2    (1972).  To survive a motion to dismiss, a plaintiff needs to

3    plead "only enough facts to state a claim to relief that is

4    plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.

5    544, 570 (2007).  This "plausibility standard," however, "asks

6    for more than a sheer possibility that a defendant has acted

7    unlawfully," and where a complaint pleads facts that are "merely

8    consistent with" a defendant's liability, it "stops short of the

9    line between possibility and plausibility." Ashcroft v. Iqbal,

10   556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57).

11   IV.  Discussion

12       A.   Slander of Title

13            To state a claim for slander of title, a plaintiff must

14   allege: "1) a publication; 2) which is without privilege or

15   justification; 3) which is false; and 4) which causes direct and

16   immediate pecuniary loss." Jackson v. Ocwen Loan Servicing, LLC,

17   No. 2:10-cv-00711-MCE-GGH, 2010 WL 3294397, at *4 (E.D. Cal.

18   Aug.20, 2010) (citing Manhattan Loft, LLC v. Mercury Liquors,

19   Inc., 173 Cal. App. 4th 1040, 1050–51 (2d Dist. 2009)).

20   Plaintiffs claim that defendants maliciously recorded the NOD

21   with false and contradictory statements, which caused the

22   plaintiffs to lose out on obtaining outside credit.

23            There is no dispute that the recording of the NOD was a

24   publication.  The Complaint further alleges that the declaration

25   accompanying the NOD contained the false assertions that

26   defendants both attempted to contact plaintiffs to assess

27   plaintiffs' financial situation and had exercised due diligence

28   to contact plaintiffs but were unable to do so.  (Compl. ¶ 21.)

1   Obviously, both assertions in the declaration could not be true,

2   and plaintiffs allege that defendants neither contacted them nor

3   attempted to do so.  (Id. ¶ 24.)  Plaintiffs further allege that

4   defendants recorded a rescission of the NOD after plaintiffs

5   pointed out these inconsistencies.  (Id. ¶ 34.)

6        What is fatally lacking from this claim in the

7   Complaint is any allegation from which it could plausibly be

8   inferred that the loss plaintiffs claim to have suffered, i.e.,

9   the withdrawal of offers of credit by other financial

10  institutions, resulted from the allegedly false statements.

11  Instead, it appears from the Complaint that the loss is alleged

12  to have resulted from the recording of the NOD itself, rather

13  than the contents of the declaration in support of it.  (Id. ¶ 26

14  ("The false recording of the Notice of Default resulted in

15  substantial damages to Plaintiffs.").)

16       At best, it can be inferred from this that it was the

17  fact of plaintiffs' default which discouraged the other creditors

18  from extending credit to them.  It is undisputed, however, that

19  plaintiffs had stopped making payments on the loan and were

20  therefore in default at the time the NOD was recorded.  (Compl. ¶

21  17.)  Plaintiffs present no theory to support any plausible

22  inference that it was the assertions in the declaration relating

23  to what efforts may have been made to contact plaintiffs which

24  caused the other financial institutions to withhold credit.

25       Accordingly, because the Complaint does not allege

26  direct and immediate pecuniary loss resulting from the allegedly

27  false publications, the court must grant defendants' motion to

28  dismiss plaintiffs' slander of title claim.

1    B.    Negligent Misrepresentation

2         The elements of negligent misrepresentation under

3    California law are: "(1) the misrepresentation of a past or

4    existing material fact, (2) without reasonable ground for

5    believing it to be true, (3) with intent to induce another's

6    reliance on the fact misrepresented, (4) justifiable reliance on

7    the misrepresentation, and (5) resulting damage." Apollo Capital

8    Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226,

9    243 (2d Dist. 2007).

10        Plaintiffs' claim for negligent misrepresentation fails

11   because plaintiffs do not allege that they relied on any

12   misrepresentation by defendants.  "It is settled that a

13   plaintiff, to state a cause of action for deceit based on a

14   misrepresentation, must plead that he or she actually relied on

15   the misrepresentation." Mirkin v. Wasserman, 5 Cal. 4th 1082,

16   1088 (1993).  At most, plaintiffs allege that the financial

17   institutions from which plaintiffs sought an extension of credit

18   relied on the NOD.  (Compl. ¶¶ 25-27.)  Not only do plaintiffs

19   fail to allege reliance on the misrepresentations in the NOD, but

20   plaintiffs immediately contacted defendants to correct them.

21   (Id. ¶ 30.)  Accordingly, because plaintiffs do not allege

22   reliance on any misrepresentation, the court must grant

23   defendants' motion to dismiss plaintiffs' negligent

24   misrepresentation claim.

25    C.    Negligence

26        To prove a cause of action for negligence, plaintiff

27   must show: "(1) a legal duty to use reasonable care, (2) breach

28   of that duty, and (3) proximate cause between the breach and (4)

1    the plaintiff's injury." Mendoza v. City of Los Angeles, 66 Cal.

2    App. 4th 1333, 1339 (2d Dist. 1998).  "The existence of a legal

3    duty to use reasonable care in a particular factual situation is

4    a question of law for the court to decide." Vasquez v.

5    Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (4th Dist.

6    2004).

7         Plaintiffs fail to allege a plausible theory under

8    which defendants owed them a duty of care.  An arm's length

9    transaction between lender and borrower does not create an

10   actionable duty of care.  Saldate v. Wilshire Credit Corp., 711

11   F. Supp. 2d 1126, 1132 (E.D. Cal. 2010) (O'Neill, J.); see also

12   Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089,

13   1096 (3d Dist. 1991) ("[A]s a general rule, a financial

14   institution owes no duty of care to a borrower when the

15   institution's involvement in the loan transaction does not exceed

16   the scope of its conventional role as a mere lender of money.").

17   "This general rule also applies to loan servicers." Argueta v.

18   J.P. Morgan Chase, No. CIV. 2:11-441 WBS GGH, 2011 WL 2619060, at

19   *4 (E.D. Cal. June 30, 2011).

20        Plaintiffs argue that defendants owe a duty based on

21   statutory requirements for non-judicial sales under California

22   Civil Code § 2923.55.  (Compl. ¶ 50.)  This argument is

23   unpersuasive, however, because the sole remedy for a violation of

24   § 2923.55 is a postponement of the foreclosure sale.  Mabry v.

25   Superior Court, 185 Cal. App. 4th 208, 214 (2010).  Accordingly,

26   because defendants did not owe plaintiffs a legal duty of care,

27   the court must grant defendants' motion to dismiss plaintiffs'

28   negligence claim.

1          D.    UCL

2          California's UCL prohibits "any unlawful, unfair or

3   fraudulent business act or practice . . . ."  Cal. Bus. & Prof.

4   Code § 17200.  The statute "establishes three varieties of unfair

5   competition . . . .  In other words, a practice is prohibited as

6   unfair or deceptive even if not unlawful and vice versa."  Cel-

7   Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163,

8   180 (1999) (internal quotation marks and citations omitted).

9   Plaintiffs allege violations under all three prongs.

10         First, § 17200's unlawful prong "borrows violations of

11  other laws and treats them as unlawful practices that the unfair

12  competition law makes independently actionable."  Cel-Tech, 20

13  Cal. 4th at 180.  Plaintiffs base their "unlawful" claim on

14  defendants' alleged violation of § 2923.55, but, as described

15  above, the sole remedy for § 2923.55 violations is a postponement

16  of the foreclosure sale.  Mabry, 185 Cal. App. 4th at 214.

17  Plaintiffs' UCL claim therefore cannot proceed under the unlawful

18  prong.

19         Second, a plaintiff bringing a claim under the UCL's

20  fraudulent prong "must plead and prove actual reliance."  In re

21  Tobacco II Cases, 46 Cal. 4th 298, 329 (2009).  In other words, a

22  "plaintiff must allege he or she was motivated to act or refrain

23  from action based on the truth or falsity of a defendant's

24  statement."  Kwikset Corp. v. Superior Court, 51 Cal. 4th 310,

25  327 (2011).  As discussed above regarding plaintiffs' negligent

26  misrepresentation claim, allegations of actual reliance are

27  absent here.  Plaintiffs' UCL claim therefore cannot proceed

28  under the fraudulent prong.

1    Finally, a business practice is "unfair" when it

2    "violates established public policy or if it is immoral,

3    unethical, oppressive or unscrupulous and causes injury to

4    consumers which outweighs its benefits." McKell v. Wash. Mut.,

5    Inc., 142 Cal. App. 4th 1457, 1473 (2d Dist. 2006).  However, if

6    "the Legislature has permitted certain conduct or considered a

7    situation and concluded no action should lie, courts may not

8    override that determination.  When specific legislation provides

9    a 'safe harbor,' plaintiffs may not use the general unfair

10   competition law to assault that harbor." Cel-Tech, 20 Cal.4th at

11   182.

12    Plaintiffs allege that defendants engaged in "unfair"

13   business practices "because they violated the laws and underlying

14   legislative policies designed to prevent foreclosure, where

15   possible, by requiring mortgage holders and servicers to engage

16   in honest foreclosure prevention efforts." (Compl. ¶ 58.)  The

17   laws plaintiffs point to, however, provide a safe harbor for the

18   allegedly unfair practices here.  See Cal. Civ. Code § 2924.12(c)

19   ("A mortgage servicer, mortgagee, trustee, beneficiary, or

20   authorized agent shall not be liable for any violation that it

21   has corrected and remedied prior to the recordation of a

22   trustee's deed upon sale . . . .")  Plaintiffs "may not use the

23   general unfair competition law to assault that harbor." Cel-

24   Tech, 20 Cal. 4th at 182.  Accordingly, because plaintiffs claim

25   fails under all three prongs of the UCL, the court must grant

26   defendants' motion to dismiss the claim.

27    IT IS THEREFORE ORDERED that defendants' motion to

28   dismiss be, and the same hereby is, GRANTED.

1          Plaintiffs have ten days from the date of this Order to

2   file an amended complaint, if they can do so consistent with this

3   Order.

4   Dated:   October 28, 2013

5

6   WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10