UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

LARRY D. JENT; MARY S. JENT,

            Plaintiffs,

    v.

NORTHERN TRUST CORPORATION; and
THE NORTHERN TRUST COMPANY,

            Defendants.

CIV. NO. 2:13-1684 WBS CKD

MEMORANDUM AND ORDER RE:
MOTION TO DISMISS

----oo0oo----

        Plaintiffs Larry D. Jent and Mary S. Jent brought this action against defendants Northern Trust Corporation and the Northern Trust Company in connection with defendants' allegedly wrongful conduct related to a residential loan.  Defendants now move to dismiss plaintiffs' First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.   Factual and Procedural Background

        In 2011, plaintiffs entered into a loan agreement

1

1   secured by a Deed of Trust on property located at 12001 Somerset

2   Drive in Truckee, California (the "Property").  (FAC ¶¶ 1, 16

3   (Docket No. 16); Defs.' Req. for Judicial Notice ("RJN") Ex. 1

4   (Docket No. 19-1).)  The Note and Deed of Trust named Northern

5   Trust, N.A., a predecessor by merger to defendant Northern Trust

6   Company, as beneficiary.  (FAC ¶ 16.)  Beginning in November

7   2012, plaintiffs were unable to make monthly payments.  (Id. ¶

8   17.)  At this time, the Property was listed for sale, and

9   plaintiffs attempted to secure additional credit with other

10  financial institutions.  (Id. ¶¶ 18-19.)

11          On March 21, 2013, defendants recorded a Notice of

12  Default ("NOD") on the Property, allegedly without contacting

13  plaintiffs as required by California law.  (Id. ¶ 23; RJN Ex. 3

14  (Docket No. 19-3).)  According to plaintiffs, the NOD was

15  accompanied by a declaration pursuant to California Civil Code

16  section 2923.55 making the contradictory assertions that

17  defendants had both contacted plaintiffs to assess plaintiffs'

18  financial situation and that defendants, despite exercising due

19  diligence, were unable to contact plaintiffs.  (FAC ¶ 24.)

20          Plaintiffs claim that, as a result of the recording of

21  the NOD, other financial institutions withdrew their offers of

22  credit.  (FAC ¶¶ 29-33.)  Plaintiffs also allege that the

23  inconsistent statements in the declaration itself caused harm in

24  the form of reduced value of the Property.  (Id.  ¶¶ 34-35.)

25  Further, plaintiffs claim defendants made the alleged

26  contradictory assertions with intent to do harm.  (Id. ¶¶ 37-38.)

27  In April 2013, plaintiffs informed defendants that the NOD had

28  been improperly recorded, and in May defendants recorded a

2

1    rescission of the NOD.  (Id. ¶¶ 39-45; RJN Ex. 4 (Docket No. 19-
2    4).)

3              On August 18, 2013, plaintiffs filed a Complaint
4    bringing claims for slander of title, negligent
5    misrepresentation, negligence, and violation of California's
6    Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200
7    et seq.  (Docket No. 1.)  The court granted defendants' motion to
8    dismiss the Complaint in its entirety on October 28, 2013.
9    (Docket No. 15.)  On November 7, 2013, plaintiffs filed the FAC,
10   realleging claims for slander of title, negligence, and
11   violations of the UCL.  (Docket No. 16.)  Defendants now move to
12   dismiss the FAC for failure to state a claim pursuant to Rule
13   12(b)(6).  (Docket No. 18.)

14   II.  Request for Judicial Notice

15             In general, a court may not consider items outside the
16   pleadings when deciding a motion to dismiss, but it may consider
17   items of which it can take judicial notice.  Barron v. Reich, 13
18   F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial
19   notice of facts "not subject to reasonable dispute" because they
20   are either "(1) generally known within the territorial
21   jurisdiction of the trial court or (2) capable of accurate and
22   ready determination by resort to sources whose accuracy cannot
23   reasonably be questioned."  Fed. R. Evid. 201.  A court may
24   properly take judicial notice of matters of public record outside
25   the pleadings.  See MGIC Indem. Corp. v. Weisman, 803 F.2d 500,
26   504 (9th Cir. 1986).  A court may also consider a document
27   outside the complaint if "that document's authenticity is not
28   questioned and the plaintiff's complaint necessarily relies on

                                      3

1    that document."  Ayala v. World Sav. Bank, FSB, 616 F. Supp. 2d

2    1007, 1014 n.3 (C.D. Cal. 2009) (citation omitted).

3              Defendants request that the court judicially notice

4    four recorded documents pertaining to the Property: the

5    underlying promissory Note, printouts of tax assessments against

6    the Property, the NOD, and the Notice of Rescission.  (See RJN

7    Exs. 1-4.)  Plaintiffs do not oppose this request.  The court

8    will take judicial notice of the Note, the NOD, and the Notice of

9    Rescission, since they are matters of public record whose

10   accuracy cannot be questioned.  See Lee v. City of Los Angeles,

11   250 F.3d 668, 689 (9th Cir. 2001).  Moreover, neither party

12   disputes the authenticity of these documents and, having referred

13   to the documents throughout the FAC, plaintiffs' claim relies on

14   them.  See Ayala, 616 F. Supp. 2d at 1014 n.3.  The tax

15   assessments do not affect the outcome of this Order, and the

16   court therefore declines to take judicial notice of them.

17   III. Analysis

18             On a motion to dismiss, the court must accept the

19   allegations in the complaint as true and draw all reasonable

20   inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

21   U.S. 232, 236 (1974), overruled on other grounds by Davis v.

22   Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

23   (1972).  To survive a motion to dismiss, a plaintiff needs to

24   plead "only enough facts to state a claim to relief that is

25   plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

26   544, 570 (2007).  This "plausibility standard," however, "asks

27   for more than a sheer possibility that a defendant has acted

28   unlawfully," and where a complaint pleads facts that are "merely

4

1  consistent with" a defendant's liability, it "stops short of the

2  line between possibility and plausibility."  Ashcroft v. Iqbal,

3  556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57).

4      A.   Slander of Title

5       "Slander of title occurs when a person, 'without a

6  privilege to do so, publishes a false statement that disparages

7  title to property and causes the owner thereof some pecuniary

8  loss or damage.'"  Ghuman v. Wells Fargo Bank, N.A., --- F. Supp.

9  2d ----, Civ. No. 1:12-00902 AWI BAM, 2013 WL 552097, at *3 (E.D.

10 Cal. Feb. 13, 2013) (quoting Sumner Hill Homeowners' Ass'n v. Rio

11 Mesa Holdings, LLC, 205 Cal. App. 4th 999, 1030 (5th Dist.

12 2012)).  To state a claim for slander of title, a plaintiff must

13 allege: "1) a publication; 2) which is without privilege or

14 justification; 3) which is false; and 4) which causes direct and

15 immediate pecuniary loss."  Jackson v. Ocwen Loan Servicing, LLC,

16 Civ. No. 2:10-00711 MCE GGH, 2010 WL 3294397, at *4 (E.D. Cal.

17 Aug. 20, 2010) (citing Manhattan Loft, LLC v. Mercury Liquors,

18 Inc., 173 Cal. App. 4th 1040, 1050-51 (2d Dist. 2009)).

19 Plaintiffs again claim that defendants maliciously recorded the

20 NOD with an accompanying declaration that contained false and

21 contradictory statements, which caused plaintiffs to lose out on

22 obtaining outside credit and lowered the value and vendibility of

23 the Property.  (FAC ¶¶ 23-36.)

24       Plaintiffs again fail to allege a plausible connection

25 between any allegedly false statements and the losses plaintiffs

26 claim to have suffered.  "[A]n essential element of a cause of

27 action for slander of title is that the plaintiff suffered

28 pecuniary damage as a result of the disparagement of title . . .

5

1   ."   Sumner Hill, 205 Cal. App. 4th at 1032 (emphasis added)

2   (citing Manhattan Loft, 173 Cal. App. 4th at 1057).   "If the

3   publication is reasonably understood to cast doubt upon the

4   existence or extent of another's interest in land, it is

5   disparaging to the latter's title."   Id. at 1030 (citing Hill v.

6   Alan, 259 Cal. App. 2d 470, 489 (1st Dist. 1968)).

7           Plaintiffs make contradictory allegations regarding

8   whether it was the NOD itself or the accompanying declaration

9   that caused their harm.   Although plaintiffs amended their

10  complaint to allege that, "[a]ccording to multiple licensed

11  California real estate agents, the inconsistent assertions in the

12  declaration . . . caused the value and salability of the Subject

13  Property to be lowered even after the Notice was rescinded," (FAC

14  ¶ 34), plaintiffs also appear to allege that a financial

15  institution withdrew on offer of credit "as a result of the

16  negative affect the assertions made in the Notice of Default"

17  itself, (id. ¶ 33).   Moreover, the allegedly false statement in

18  the declaration accompanying the NOD does not itself "cast doubt

19  upon the existence or extent of" plaintiffs' interest in the

20  Property."   Sumner Hill, 205 Cal. App. 4th at 1030.   Nothing in

21  the declaration, by itself, makes any claim on the Property, and

22  the declaration is therefore meaningless without the NOD.   See

23  Phillips v. Glazer, 94 Cal. App. 2d 673, 677 (2d Dist. 1949)

24  (citation omitted) (defining a disparaging statement as "a

25  complete denial of title in others" or "any unfounded claim of an

26  interest in the property which throws doubt upon its ownership").

27          Plaintiffs appear to advance the theory that the NOD

28  itself was rendered "false" by virtue of the alleged defect in

6

1   the declaration.  The alleged defect upon which plaintiffs rely

2   amounts to the fact that in addition to simply checking the box

3   indicating that defendants contacted plaintiffs to assess

4   plaintiffs' financial situation defendants also checked the box

5   indicating that despite exercising due diligence defendants were

6   unable to contact plaintiffs.  Nobody disputes that the first box

7   in the declaration was properly checked.  The fact that

8   defendants also checked the second box, in the court's view,

9   amounts to no more than surplusage.  Further, the court observes

10  that checking both boxes is not technically inconsistent:

11  defendants could have been unable to contact plaintiffs after

12  several attempts and have ultimately contacted plaintiff.  More

13  importantly, to rely upon such a hypertechnical argument to

14  invalidate the NOD would allow plaintiffs to play "gotcha" with

15  defendants.  The court is unwilling to effect such a result.

16          There is no claim that the NOD itself contained false

17  statements that disparaged plaintiffs' title.  As plaintiffs

18  admit, they were unable to make the loan payments between

19  November 2012 and January 2013.  (FAC ¶ 17.)  Therefore, the NOD

20  is not actionable because it is not false, and even assuming the

21  declaration accompanying the NOD was false, it is not actionable

22  because it does not disparage plaintiffs' title.  Plaintiffs,

23  therefore, fail to allege they "suffered pecuniary damage as a

24  result of the disparagement of title."  Sumner Hill, 205 Cal.

25  App. 4th at 1032.  Accordingly, the court must grant defendants'

26  motion to dismiss plaintiffs' slander of title claim.

27      B.   Negligence

28          To assert a cause of action for negligence, plaintiffs

7

1   must allege: "(1) a legal duty to use reasonable care, (2) breach

2   of that duty, and (3) proximate cause between the breach and (4)

3   the plaintiff's injury." Mendoza v. City of Los Angeles, 66 Cal.

4   App. 4th 1333, 1339 (2d Dist. 1998).  "The existence of a legal

5   duty to use reasonable care in a particular factual situation is

6   a question of law for the court to decide." Vasquez v.

7   Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (4th Dist.

8   2004).

9          Plaintiffs again fail to allege a plausible theory

10  under which defendants owed them a duty of care.  An arm's length

11  transaction between lender and borrower does not create an

12  actionable duty of care. Saldate v. Wilshire Credit Corp., 711

13  F. Supp. 2d 1126, 1132 (E.D. Cal. 2010) (O'Neill, J.); see also

14  Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089,

15  1096 (3d Dist. 1991) ("[A]s a general rule, a financial

16  institution owes no duty of care to a borrower when the

17  institution's involvement in the loan transaction does not exceed

18  the scope of its conventional role as a mere lender of money.").

19  "This general rule also applies to loan servicers." Argueta v.

20  J.P. Morgan Chase, Civ. No. 2:11-441 WBS GGH, 2011 WL 2619060, at

21  *4 (E.D. Cal. June 30, 2011).

22          Plaintiffs now allege that defendants "exceeded the

23  scope of the conventional role of a mere lender of money."  (FAC

24  ¶ 56.)  Plaintiffs do not allege any further facts to

25  substantiate this allegation, and, without more, the court is not

26  required to accept these conclusory allegations as true.  See

27  Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir.

28  2010) ("We are not . . . required to accept as true allegations

8

1    that contradict exhibits attached to the Complaint or matters

2    properly subject to judicial notice, or allegations that are

3    merely conclusory, unwarranted deductions of fact, or

4    unreasonable inferences.").  These allegations are not sufficient

5    to plead the existence of a duty of care owed to plaintiffs.

6           Nor do the statutory requirements for non-judicial

7    sales under California Civil Code section 2923.55 create a duty

8    of care here.  Plaintiffs again fail to provide any authority for

9    the proposition that they may seek damages for a violation of

10   section 2923.55 under a theory of negligence.  In contrast,

11   California courts have repeatedly held that "California's non-

12   judicial foreclosure statute . . . is a 'comprehensive statutory

13   framework established to govern non-judicial foreclosure sales

14   [and] is intended to be exhaustive.'"  Lane v. Vitek Real Estate

15   Indus. Grp., 713 F. Supp. 1092, 1098 (E.D. Cal. 2010) (Shubb, J.)

16   (alteration in original) (quoting Moeller v. Lien, 25 Cal. App.

17   4th 822, 834 (2d Dist. 1994)).  The California legislature has

18   spoken: a borrower may seek an injunction to enjoin an improper

19   foreclosure if a trustee's deed upon sale has not been recorded,

20   Cal. Civ. Code § 2924.12(a)(1); or, if a trustee's deed upon sale

21   has been recorded, the borrower may seek damages for violations

22   of the statutory provisions, id. § 2924.12(b).  However, the

23   statute provides a "safe harbor," precluding liability "for any

24   violation . . . corrected and remedied prior to the recordation

25   of a trustee's deed upon sale."  Id. § 2924.12(c).

26          Here, defendants rescinded the NOD, (RJN Ex. 4), and no

27   trustee's deed upon sale has been recorded.  Therefore, section

28   2924.12(c) precludes liability under California's non-judicial

1  foreclosure statutory scheme.  See Vasquez v. Bank of Am., N.A.,

2  Civ. No. 13-02902 JST, 2013 WL 6001924, at *7 (N.D. Cal. Nov. 12,

3  2013) (confirming that a plaintiff "may not seek remedies under

4  Section 2924.12 that do not apply to the present status of the

5  property," and noting that, "if no trustee's deed upon sale has

6  been recorded," any damages claims "are unavailable until such

7  time as the deed upon sale has been recorded").  To import a duty

8  of care from this statute would allow plaintiffs to sue for

9  damages where the legislature expressly foreclosed liability.

10  Although plaintiffs contend that their alleged damages are

11  otherwise left without remedy, it is not the place of this court

12  to second-guess the legislature and expand the private right of

13  action for violations of section 2923.55 beyond what the

14  legislature has already provided.  Cf. Ottolini v. Bank of Am.,

15  Civ. No. 11-0477 EMC, 2011 WL 3652501, at *5 (N.D. Cal. Aug. 19,

16  2011) (holding that allowing non-judicial foreclosure statute "to

17  serve as a statutory basis for a negligence claim would

18  circumvent the limited scope of relief provided by the statute").

19        Finally, plaintiffs contend that the alleged violation

20  of section 2923.55 constitutes negligence per se.  "Negligence

21  per se delineates a specific manner, based upon statute or

22  regulation, in which a breach of duty may be identified.

23  However, a breach is irrelevant if no duty has first been

24  established."  Heflebower v. JPMorgan Chase Bank, NA, Civ. No.

25  1:12-01671 AWI SMS, 2013 WL 5476806, at *11 (E.D. Cal. Sept. 30,

26  2013).  Thus, negligence per se only allows for a presumption

27  that a defendant failed to exercise due care after the court has

28  already determined that the defendant owes the plaintiff an

10

1  independent duty of care.  Cal. Serv. Station & Auto. Repair

2  Ass'n v. Am. Home Assur. Co., 62 Cal. App. 4th 1166, 1180 (1st

3  Dist. 1998).  Here, having found above that defendants did not

4  owe plaintiffs a duty of care, plaintiffs' negligence per se

5  theory cannot support their claim.

6          Accordingly, because defendants did not owe plaintiffs

7  a legal duty of care, the court will grant defendants' motion to

8  dismiss plaintiffs' negligence claim.

9       C.    UCL

10         California's UCL prohibits "any unlawful, unfair or

11  fraudulent business act or practice . . . ."  Cal. Bus. & Prof.

12  Code § 17200.  "This cause of action is generally derivative of

13  some other illegal conduct or fraud committed by a defendant, and

14  '[a] plaintiff must state with reasonable particularity the facts

15  supporting the statutory elements of the violation.'"  Castaneda

16  v. Saxon Mortg. Servs., Inc., 687 F. Supp. 2d 1191, 1202 (E.D.

17  Cal. 2009) (Shubb, J.) (quoting Khoury v. Maly's of Cal., Inc.,

18  14 Cal. App. 4th 612, 619 (2d Dist. 1993)).

19         As alleged, plaintiffs' UCL claims are wholly

20  derivative of the slander of title claim and alleged section

21  2923.55 violations described above.  (See FAC ¶¶ 61-62 (alleging

22  defendants "engaged in 'unlawful' business practices under the

23  UCL based on the Slander of Title Claim and intentional violation

24  of Civil Code 2923.55" and that defendants "engaged in 'unfair'

25  business practices under the UCL because they intentionally

26  violated Civil Code section 2923.55").)

27         Plaintiffs' slander of title claim cannot be the basis

28  of their UCL claim because, as described above, the slander of

1 title claim fails for lack of falsity and a plausible connection

2 between any allegedly false statements and plaintiffs' harm.

3 Plaintiffs contend, however, that the aforementioned statutory

4 safe harbor under section 2924.12, precluding liability "for any

5 violation . . . corrected and remedied prior to the recordation

6 of a trustee's deed upon sale," Cal. Civ. Code section

7 2924.12(c), does not apply to derivative claims under the UCL

8 because defendants' alleged wrongdoing was intentional.

9         The California Supreme Court has held that "[w]hen

10 specific legislation provides a 'safe harbor,' plaintiffs may not

11 use the general unfair competition law to assault that harbor."

12 Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th

13 163, 182 (1999).  Despite plaintiffs' contentions, Lopez v.

14 Nissan North America, Inc., 201 Cal. App. 4th 572 (2d Dist.

15 2011), does not establish that intentional conduct is precluded

16 from statutory "safe harbor" provisions under the UCL.  Lopez

17 merely referenced a case limiting the applicability of a safe

18 harbor provision relating to the regulation of rental cars,

19 Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1163 (1st Dist.

20 2000), before holding that Schnall did not apply because Schnall

21 "involve[d] a very different type of safe harbor provision."

22 Lopez, 201 Cal. App. 4th at 594.

23         Section 2924.12 is also "a very different type of safe

24 harbor provision."  Id.  Plaintiffs have not offered any

25 authority--and the court is not aware of any--stating that the

26 safe harbor established by section 2924.12 does not apply to

27 intentional conduct.  Instead, by its own terms, the statute

28 precludes from liability "any violation . . . corrected and

1   remedied prior to a trustee's sale."  Cal. Civ. Code § 2924.12(c)

2   (emphasis added).  The only distinction the statute makes

3   regarding intent is allowing for statutory or treble damages if

4   the violation "was intentional, reckless or resulted in willful

5   misconduct."  Id. § 2924.12(b).  Thus, section 2924.12 provides a

6   safe harbor for defendants' alleged wrongdoing, and "plaintiffs

7   may not use the general unfair competition law to assault that

8   harbor," allegations of intentional wrongdoing notwithstanding.

9   Cel-Tech, 20 Cal. 4th at 812.  Defendants' alleged violation of

10  section 2923.55, intentional or not, is not independently

11  actionable under the UCL.

12          Because plaintiffs' underlying claim for slander of

13  title fails, and section 2924.12 immunizes defendants' alleged

14  wrongdoing, plaintiffs' UCL claim has no leg to stand on.

15  Accordingly, the court must grant defendants' motion to dismiss

16  the claim.

17      D.   Leave to Amend

18          Although leave to amend must be freely given, the court

19  is not required to allow futile amendments.  See DeSoto v. Yellow

20  Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).  Because

21  the court has already permitted plaintiffs to amend their

22  pleadings and it appears that plaintiffs are unable to state a

23  viable claim against defendants, all claims will be dismissed

24  with prejudice and without leave to amend.

25          IT IS THEREFORE ORDERED that defendants' motion to

26  dismiss be, and the same hereby is, GRANTED.

27          The Clerk of the Court is directed to enter a judgment

28  of dismissal in accordance with this Order and close the file.

13

1  Dated:   January 14, 2014

2

3  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14